UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OAK POINT PARTNERS, LLC,

        Plaintiff,

v.

BLUE CROSS BLUE SHIELD
OF MICHIGAN,

        Defendant.
_____/

Case Number 19-10662
Honorable David M. Lawson

## **OPINION AND ORDER DENYING MOTION TO DISMISS**

Defendant Blue Cross Blue Shield of Michigan has been sued successfully a number of times for overcharging companies for whom it had agreed to process healthcare claims for their self-funded employee health plans. Plaintiff Oak Point Partners purchased the assets of several bankrupt companies that held self-funded health plans administered by Blue Cross and brings this lawsuit to recover the excess fees it says Blue Cross overcharged those plans. But Blue Cross argues that Oak Point has no standing to sue for those fees because it is not a successor fiduciary of those plans, and the assets belonged to the plan beneficiaries, that is, the respective employees, not the bankrupt plan sponsors. Without standing, it says, the Court has no subject matter jurisdiction and the case must be dismissed. However, the right to sue for the return of those excess fees was among the remnant assets the plaintiff purchased from the bankruptcy estates. And because Oak Point has alleged facts that qualify it as a successor fiduciary under the Employee Retirement and Income Security Act (ERISA), it has standing to prosecute this lawsuit. The motion to dismiss will be denied.

I.

The underlying circumstances of the case, as alleged in the complaint, are materially identical to those of a long line of actions that have been brought against Blue Cross for concealment and self-dealing involving improperly obfuscated administrative fees charged to customers for whom it administered self-funded benefit plans. *E.g.*, *Saginaw Chippewa Indian Tribe of Michigan v. Blue Cross Blue Shield of Michigan*, 748 F. App'x 12 (6th Cir. 2018); *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan*, 751 F.3d 740 (6th Cir. 2014); *Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Michigan*, 722 F.3d 861 (6th Cir. 2013); *Little River Band v. Blue Cross Blue Shield of Michigan*, 183 F. Supp. 3d 835 (E.D. Mich. 2016); *Dykema Excavators, Inc. v. Blue Cross & Blue Shield of Michigan*, 77 F. Supp. 3d 646 (E.D. Mich. 2015). The overcharges sometimes are referred to in those cases as "hidden fees." All of the plans in question were administered under the terms of identical service agreements, and the administrative fee concealment schemes at issue also were carried out through identical means. As in the numerous other actions, the basic allegations are that Blue Cross violated the general duties that ERISA imposes on fiduciaries, *see* 29 U.S.C. § 1104(a)(1), as well as ERISA's prohibition against self-dealing, 29 U.S.C. § 1106(b)(1).

Blue Cross states in its motion that it disputes some of the allegations and questions whether some of the bankrupt entities ever had an ASC with it. But for the purpose of this motion, the Court accepts the allegations in the complaint as they have been pleaded.

Plaintiff Oak Point Partners, LLC (a successor by merger with Oak Point Partners, Inc.) alleges in its complaint that it (or its predecessor) acquired the assets of the bankruptcy estates of Checker Motors Corporation; FNH, LLC; IMH, Inc. (f/k/a Interlake Material Handling, Inc.); National Steel Corporation; Cadence Innovation, LLC; and New Venture Real Estate Holdings,

LLC. Each of those bankrupt companies was a sponsor of an ERISA-governed employee welfare benefit plan formerly administered by Blue Cross Blue Shield under an Administrative Services Contract (ASC).

Oak Point states that each estate included residual assets of one or more plans. The complaint alleges that any claims those benefit plans had against Blue Cross for return of the hidden fees were included in the assets of the estates and thus were acquired by the plaintiff. Oak Point contends that, because it acquired all of the "rights and benefits" under each plan, it is a "successor fiduciary" as defined under ERISA.

The complaint pleads claims for breach of fiduciary duty under 29 U.S.C. § 1002(21)(A) (Count I) and self-dealing under 29 U.S.C. § 1106 (Count II). Blue Cross cites bankruptcy court filings in its motion to dismiss, which, it says, indicate that the purchases by the plaintiff all were described as acquiring the "remnant assets" of the debtor entities. It asserts that it has confirmed that at least three of the entities at one time had benefit plans administered by it, but it has not confirmed the details of those plans or the involvement of the other entities.

All of the plans have been terminated. Blue Cross argues that the pleaded facts do not support any theory favoring Oak Point's standing to sue for hidden fees because it is not a "beneficiary" of any the plans; the hidden fees would inure to the benefit of the respective plans, not the plan sponsor, and therefore are not assets of the bankruptcy estates Oak Point purchased; and because the plans were terminated, they can have no fiduciary, successor or otherwise. Oak Point sees things differently, and ERISA's language and the caselaw support its position.

II.

A defendant may move under Federal Rule of Civil Procedure 12(b)(1) to dismiss a case "for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).

"A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Ibid.* (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis," but "[a] factual attack challenges the factual existence of subject matter jurisdiction." *Ibid.*

The main focus of Blue Cross's motion is the complaint and its allegedly insufficient allegations. Although Blue Cross attached to its brief some motion papers from one of the bankruptcy cases and a tax document for one of the plans, it appears that those items were meant to rebut an anticipated argument from the plaintiff to amend the complaint. It is proper, therefore, to characterize Blue Cross's motion as a facial attack on subject matter jurisdiction. Accordingly, the Court takes the plaintiff's factual allegations as true. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). The "[p]laintiff bears the burden of establishing that subject matter jurisdiction exists." *Cartwright*, 751 F.3d at 760 (citing *DLX, Inc. v. Commonwealth of Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004)).

The issue of subject matter jurisdiction lurks in every federal case, because the Constitution authorizes federal courts to decide only "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1; *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Here, it is front and center.

"The power of the federal courts is limited to hearing actual cases and controversies." *Miller v. City of Wickliffe*, 852 F.3d 497, 502-03 (6th Cir. 2017) (citing U.S. Const. art. III, § 2, cl. 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Article III "[s]tanding is a jurisdictional requirement," and "[i]f no plaintiff has standing, then the court lacks subject-matter jurisdiction." *Tennessee General Assembly v. United States Dep't of State*, 931 F.3d 499, 507 (6th

Cir. 2019). The "irreducible constitutional minimum of standing" requires a plaintiff to plead facts in its complaint to show "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000). As the defendant has mounted a facial attack, "'the plaintiff must clearly allege facts demonstrating each element.'" *Tennessee General Assembly*, 931 F.3d at 507 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quotation marks omitted).

Blue Cross says that Oak Point has not suffered an injury in fact because the funds Blue Cross extracted as hidden fees never belonged to the bankrupt plan sponsors; instead, they were held in trust for the benefit of the plan sponsors' respective employees. Following that line of reasoning, those purloined funds were not part of the remnant assets Oak Point purchased from the bankruptcy estates. Blue Cross believes, therefore, that there was no injury inuring to the bankrupt companies. And because the plaintiff would not be the proper party to *receive* a refund or disgorgement award, Blue Cross contends that Oak Point cannot satisfy the redressability requirement.

That argument starts to unravel, however, when one realizes that it is not the hidden fees Oak Point purchased from the bankruptcy estates, but rather the right to sue for them. The bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "[I]t is well established that the 'interests of the debtor in property' include 'causes of action.'" *Bauer v. Commerce Union Bank*, 859 F.2d

438, 440-41 (6th Cir. 1988) (quoting *Gochenour v. Cleveland Terminals Building Co.*, 118 F.2d 89, 93 (6th Cir. 1941)).

Oak Point purchased the debtors' causes of action as part of the remnant assets. And "if the Debtors could have brought the claim, the Plaintiff may bring it" as well. *Kipperman v. Onex Corp.*, 411 B.R. 805, 831 (N.D. Ga. 2009); *see also LaSala v. Bordier et Cie*, 519 F.3d 121, 127 (3d Cir. 2008) ("[The Trust] was assigned a variety of individual claims by the Purchasers and was tasked with litigating them; it is . . . like a liquidating trust inasmuch as it took title to many of the remaining assets of the bankruptcy estate (including the estate's causes of action) and was tasked with liquidating and distributing them.").

It is true that "ERISA establishes a general requirement that plan assets be held in trust, 29 U.S.C. § 1103(a), (b), and creates a presumption that plan assets held under a trust agreement inure to the benefit of the employees. 29 U.S.C. § 1103(c)." *Rinard v. Eastern Co.*, 978 F.2d 265, 268 (6th Cir. 1992). However, with respect to terminated plans, if the employer strictly complies with the conditions set forth in section 1344(d)(1), then it may "overcome the presumption against any reversion." *Ibid.* That section specifies that reversion of residual assets of a plan may occur if "'(A) all liabilities of the plan to participants and their beneficiaries have been satisfied, (B) the distribution does not contravene any provision of law, and (C) the plan provides for such a distribution in these circumstances.'" *Schuck v. Gilmore Steel Corp.*, 784 F.2d 947, 951 (9th Cir. 1986) (quoting 29 USC 1344(d)(1)).

It has been widely held by federal courts that the reversionary interest is property of the bankruptcy estate that may be transferred to a purchaser of the debtor's assets. *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 211 (3d Cir. 2006) ("Under ERISA, an employer who sponsors a qualifying [benefit] plan is entitled to recoup any surplus upon termination of the plan. 29 U.S.C.

§ 1344(d)(1). This recoupment right is a transferable property interest. . . . Fruehauf's potential future recoupment of the surplus from its pension plan was a transferable property interest for purposes of § 548."); *Creasy v. Coleman Furniture Corp.*, 763 F.2d 656, 662 (4th Cir. 1985) ("The district court . . . found that under the terms of the contract any left-over assets of the trust fund were to be paid over to the Company. [Thus] we find that the district court was correct in concluding that the excess, if any, would be property of the debtor's estate. The trustee acquires the rights that the corporate bankrupt possessed; therefore, the excess funds would be an asset in the bankrupt's estate."); *In re Wingspread Corp.*, 155 B.R. 658, 664 (Bankr. S.D.N.Y. 1993) ("ERISA provides that in the context of plan termination, so long as the employer complies with the mandates of section 1344(d)(1), and so long as the plan in question provides as such, then to the extent any surplus exists after full distribution to plan participants and their beneficiaries, the employer maintains a reversionary interest in it. And although the right to recover is a future estate, the reversion itself is a present, vested estate. As a result, the employer's reversionary interest falls within the broad reach of section 541(a) of the Bankruptcy Code and is considered property of the debtor's estate." (citations omitted)); *In re Silldorff*, 96 B.R. 859, 864 (C.D. Ill. 1989) ("[T]he Debtors' interests in the Plans are included in the bankruptcy estates unless the Plan qualifies as a spendthrift trust under [state] law."). Assuming that there were valid causes of action available to the debtor entities upon their liquidation in bankruptcy, the plaintiff adequately has pleaded that it acquired those claims via its purchases of all the remaining assets in the bankruptcy estate.

Blue Cross also argues that Oak Point does not fall into one of the four classes of persons that ERISA empowers to bring a civil action, which are beneficiaries, participants, fiduciaries, and the Secretary of Labor. 29 U.S.C. § 1132(a). But ERISA defines the concept of "fiduciary"

broadly and provides that "a person is a fiduciary with respect to a plan to the extent [he] exercises *any authority or control respecting management or disposition of its assets*." 29 U.S.C. § 1002(21)(A) (emphasis added).

The plaintiff has pleaded sufficient facts plausibly to suggest that it acquired the debtors' reversionary interests in any excess funds wrongfully appropriated by the defendant. The plaintiff is not divested of its potential fiduciary status with respect to the disposition of plan assets merely because the plans have been terminated. *King v. Nat'l Human Res. Comm., Inc.*, 218 F.3d 719, 724 (7th Cir. 2000) ("Even though there was no actual plan in effect when the funds were precipitously transferred, these are pension funds, subject to ERISA, and under the circumstances we think it fair to say that someone had a fiduciary obligation to manage the funds appropriately.").

Blue Cross's arguments that plan assets may be disposed of only for the benefit of plan participants are misplaced, because, as noted above, the reversionary interest in recovery of surplus funds is an exception to the general rule that plan assets must be held in trust for the sole benefit of the participants. 29 U.S.C. § 1344(d)(1). Presuming that funds wrongfully appropriated by the defendant were not used for the benefit of either the former employers or any participants of the plans, Oak Point's claim that it seeks to ensure that excess funds are distributed in compliance with ERISA, which expressly permits reversion to the employer, adequately establishes that it is seeking to vindicate, not eviscerate, its fiduciary obligations with respect to the disposition of the plan assets.

On similar facts, the Sixth Circuit readily concluded that a bankruptcy trustee was a fiduciary entitled to sue under ERISA for recovery of wrongfully appropriated funds, notwithstanding that the trustee, by definition, did not have control over funds that had been stolen from the debtor entities while the plans were in operation. *McLemore v. Regions Bank*, 682 F.3d

414, 420-21 (6th Cir. 2012). In that case, the bankruptcy trustee of a bankrupt benefit plan administrator sued a bank for breach of fiduciary duty for allowing an investment advisor to comingle funds from separate benefit plan accounts and embezzle millions of dollars. The trustee alleged that he was a successor fiduciary for each of the plans formerly administered by the embezzler, and he was obliged to "'make reasonable efforts" "to remedy known breaches of other fiduciaries." *Id.* at 421. "Accepting these allegations," the court held, "the Trustee falls within ERISA's definition of 'fiduciary.'" *Ibid.* (citing 29 U.S.C. § 1002(21)(A)).

The *McLemore* court found no impediment in the fact that the trustee no longer controlled the stolen assets. It easily dispatched the bank's contrary assertion, writing that "this argument amounts to a claim that the victim of a theft has no right to his stolen property because he no longer possesses the property." *Ibid.* (the court found "that the Trustee remains a fiduciary with respect to the victimized plans because he has sufficiently pleaded his authority to manage or dispose of all assets belonging to the plans, notwithstanding his lack of control over the particular funds that Stokes stole from plan accounts").

The *McLemore* court made clear that the trustee's fiduciary status derived directly from his pleaded obligation under ERISA properly to dispose of plan funds, not from his statutory role in supervising the bankruptcy. *Id.* at 420 (noting that "ERISA not only permits — but requires — a fiduciary to remedy the known wrongs of a cofiduciary") (citing 29 U.S.C. § 1105(a)(3)). In the same way, Oak Point adequately has alleged that it has authority to pursue the reversionary interest in excess plan funds expressly granted by ERISA, and, thus, it qualifies as a fiduciary entitled to pursue recovery of those funds via causes of action that would have been available to the debtors if they had discovered the defendant's misdeeds.

III.

Oak Point has alleged sufficient facts to establish that it has suffered an injury in fact traceable to the defendant that can be redressed by a favorable ruling from this Court. Because the plaintiff has put a legitimate case and controversy before the Court, the Court has subject matter jurisdiction over the dispute.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss (ECF No. 7) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
Dated: March 17, 2020                                          United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on March 17, 2020.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI